# EXHIBIT 1

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
07/08/2022 at 12:32:38 PM
Clerk of the Superior Court
By Melissa Valdez, Deputy Clerk

1  Rory K. Pendergast (SBN: 266765)
   THE PENDERGAST LAW FIRM, PC
2  3019 Polk Avenue
   San Diego, CA 92104
3  TEL: 619.344.8699
   FAX: 619.344.8701
4  Rory@rorylaw.com

5  Robert J. Fitzpatrick (SBN 265602)
   FITZPATRICK LAW, APC
6  3019 Polk Avenue
   San Diego, CA 92104
7  TEL: 858.213.4414
   FAX: 619.615.2154
8  Robert@FitzpatrickLawAPC.com

9  Attorneys for Plaintiffs

10

11              **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

12                         **CENTRAL DIVISION**    '24CV0297 AJB VET

13 | MYRNA ADAME; SIDNEY AGUILAR;          | No. 37-2022-00027212-CU-PO-CTL
   | JASON ALBERT; ALEX ALVAREZ;
14 | JEFFERY BAKER; ANGELICA BARRERA;      | **COMPLAINT**
   | MARIA VERONICA BLEA; JANAI BRUCE;
15 | LISETTE CARRILLO; TORI CASTREJON;     | **JURY TRIAL DEMANDED**
   | ANGELET CASTRO; JESUS CASTRO
16 | OZUNA; CATHY CLANCY; CHRISTINA
   | EITH; SOFIA ESPINOZA; MONICA
17 | FERNANDEZ GONZALEZ; TONY
   | FREEMAN; BRENDA GARCIA; HERBERT
18 | GEORGE; JULIA GONZALEZ; ARLENE
   | LALANNE; ROBERT MAGALLANES;
19 | MIGUEL MATIE; PAULINO MORALES;
   | AARON RAMOS; MICHAEL RODGERS;
20 | MAGDALENA RODRIGUEZ; NELCHINA
   | SKY; ALYCE SMITH COOPER; DARRELL
21 | STEARMAN; ROBERT STOVALL;
   | TAOTAFA TANOI-PUNEFU; LUISA TREJO;
22 | LOURDES VALLE; ROSTISLAV VAYNER;
23 | LILIANA VILLARREAL; KIMBERY
   | WALKER; MILARCA WHATLEY-KRUSE;
24 | SHERYL WOOD; JAMIE YATES; ALMA
   | AVILA; ROB CAMPBELL; MICHAEL
25 | CORBETT; ANGELA DAVIS; BILLY DODD;
   | BRENDA FIGUEROA; JOHN GARDUNO;
26 | GREGORY GREGORY; DAGOBERT JUSTIN
27 | KUNKLER; GILVERTO LARA; SANDRA
28 | MACIAS; OLGA MALDONADO VAZQUEZ;

1

| | |
|---|---|
| RAMSES MENA; MICHAEL O'BRIEN; LILIANA OROZCO; CHRISTIAN TYRONE POSADAS; SHANNON RODRIGUEZ; ANNAHI RUANO; VAENKEO SANVICHITH; HERIBERTO VAZQUEZ, SR.; HERIBERTO VAZQUEZ, JR.; PEDRO DANIEL VAZQUEZ; CHRISTOPHER WRIGHT; ANA GUTIERREZ; THOMAS BLEA; MELISSA CORTES; ROSARIO MANUEL CASTRO; SCHELLON CASTRO; JESSEMINE APARICIO; ROBERT ARAUJO; EKATERINA VAYNER; ALYSSA TAYTTE; JEANNIE NHOTHSIRI; ANDREA BREA; CHRISTIAN BLEA; VERONICA GARCIA; THOMAS BLEA, JR; MIKE GARCIA; MARCO BARRERA; JOSCLYN DAVIS; KAYLA DAVIS; COLLIN SANVICHITH; MICHAEL REYNOSO; ANGELINA ROSETTE; ARTURO BRUNO; ERNIE SALGADO; OBED AQUINO; and ROES 1-5000, inclusive | |
| Plaintiffs, | |
| v. | |
| NATIONAL STEEL AND SHIPBUILDING COMPANY, INC., a Nevada corporation; GENERAL DYNAMICS CORPORATION, INC., a Delaware Corporation; GENERAL DYNAMICS NASSCO, a business entity of unknown form; GENERAL DYNAMNICS NASSCO HOLDING, LLC; a California limited liability company; UNITED SUPPORT SERVICES, INC. a California Corporation; and DOES 1-250, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

1. This Complaint arises from the July 2020 fire that destroyed the amphibious assault ship USS Bonhomme Richard.

2. Plaintiffs are homeowners, renters, business owners, and other individuals whose health and property were severely harmed by the USS Bonhomme Richard fire.

3. Plaintiffs now sue NATIONAL STEEL AND SHIPBUILDING COMPANY, INC., a

2

USS BONHOMME RICHARD FIRE COMPLAINT

Nevada corporation; GENERAL DYNAMICS CORPORATION, INC., a Delaware Corporation; GENERAL DYNAMICS NASSCO, a business entity of unknown form; GENERAL DYNAMNICS NASSCO HOLDING, LLC; a California limited liability company; UNITED SUPPORT SERVICES, INC. a California Corporation, and DOES 1-250 (collectively, "Defendants") for just compensation, damages, and all other available remedies arising from the harms caused by the USS Bonhomme Richard fire.

## II.   JURISDICTION AND VENUE

4.   San Diego County Superior Court, as a court of general jurisdiction, has subject-matter jurisdiction over this unlimited civil case, as well as personal jurisdiction over each of Defendant.

5.   Venue is proper in San Diego County as a substantial part of the events, acts, omissions, and/or transactions complained of herein occurred in San Diego County.

## III.   PARTIES

### A.   PLAINTIFFS

6.   Plaintiffs are individuals who were, at all times relevant to this pleading, homeowners, renters, business owners, and other individuals who were residents, occupants, and/or had property located in San Diego County.  Plaintiffs name ROES 1-5000 to account for unnamed potential Plaintiffs.

7.   Plaintiffs have elected to join their individual lawsuits in a single action under rules of permissive joinder. Plaintiffs do not seek class certification or relief on any class-wide, collective, or other group basis, but instead seek the damages and other remedies identified herein on an individual basis according to proof at trial or through alternative dispute resolution efforts.

### B.   DEFENDANTS

8.   Defendant NATIONAL STEEL AND SHIPBUILDING COMPANY, INC., was, at all times relevant to this pleading, a Nevada corporation authorized to do, and doing business, in California, with its headquarters in San Diego, California.  At all times relevant to this pleading, NATIONAL STEEL AND SHIPBUILDING COMPANY, INC. provided services supporting the USS Bonhomme Richard and did so through its agents, employees, and subsidiaries.

9.   Defendant GENERAL DYNAMICS CORPORATION, INC., was, at all times relevant

to this pleading, a Delaware corporation authorized to do, and doing business, in California. At all times relevant to this pleading, GENERAL DYNAMICS CORPORATION, INC., provided services supporting the USS Bonhomme Richard and did so through its agents, employees, and subsidiaries.

10.  Defendant GENERAL DYNAMICS NASSCO was, at all times relevant to this pleading, a business entity of unknown form, and doing business, in California. At all times relevant to this pleading, GENERAL DYNAMICS NASSCO, provided services supporting the USS Bonhomme Richard and did so through its agents, employees, and subsidiaries

11.  Defendant GENERAL DYNAMNICS NASSCO HOLDING, LLC, is and was, at all times relevant to this pleading, a California Limited Liability Company, and doing business, in California. At all times relevant to this pleading, GENERAL DYNAMNICS NASSCO HOLDING, LLC provided services supporting the USS Bonhomme Richard and did so through its agents, employees, and subsidiaries.

12.  Defendant UNITED SUPPORT SERVICES, INC., is and was, at all times relevant to this pleading, a California corporation, headquartered and doing business, in California. At all times relevant to this pleading, UNITED SUPPORT SERVICES, INC. provided services supporting the USS Bonhomme Richard and did so through its agents, employees, and subsidiaries.

13.  The true names and capacities of defendants DOES 1 through 250 are currently unknown to Plaintiffs who, therefore, sue these defendants under these fictitious names pursuant to Code of Civil Procedure section 474. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein. If/when Plaintiffs learn these defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

14.  At all times relevant to this pleading, Defendants, and/or each of them, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants; and were operating within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture; and each of Defendants has ratified and approved the acts of each of the remaining Defendants. Each of Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations and duties to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially

assist the commission of these wrongful acts and other wrongdoings alleged herein, each of Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## IV. FACTS

15. The gross negligence, reckless acts, omissions, and a series of missteps by Defendants resulted in a massive fire that started on July 12, 2020 and continued until July 16, 2020, and destroyed the amphibious assault ship USS Bonhomme Richard. At the time of the fire, the ship was undergoing maintenance pier side in San Diego, CA. Given the magnitude of flammable materials present on the ship, any reasonable person in the place of Defendants would have acted with reasonable care to prevent a fire aboard the ship and would not have allowed the fire to grow to the magnitude that occurred. Defendant's negligent acts and omissions caused the fire and directly contributed to its uncontrolled spread across the ship.

16. Experts have attributed the origin of the fire to a cargo area where large cardboard boxes, maintenance supplies, and rags burned. The source of the ignition was electrical arcing activity, generating high heat, which ignited nearby flammable materials negligently strewn about the stowage area.

17. A reasonable person in Defendants' position would store away such clutter to prevent fire hazards, but Defendants failed to implement the most basic fire safety practices. The US Navy concluded in its own investigation that the five-day fire and destruction of the ship was preventable if ship building and maintenance personnel and contractors avoided clutter, followed fire safety measures, enabled unrestricted access to firefighting and damage control equipment, and enforced fire safety training.

18. Moreover, Defendant's gross negligence failed to stop the spread of the fire and, in fact, aggravated it even further. From the cargo area, the flames quickly ravaged through the ship, raising temperatures to about 1,200 degrees. The pressure that resulted caused a series of intense explosions (including one that could be heard about thirteen miles away) and led to an uncontrollable inferno that spread quickly up the elevator shafts, engine exhaust stacks, berthing, and other compartments that were storing extremely combustible material. Defendants had carelessly placed large and heavy

electric and other cables in a manner that prevented sailors from closing doors and other hatches to prevent the further spread of the fire. Misplaced scaffolding, equipment, and debris also came in the way of firefighters, thereby compounding the already difficult task of fighting flames.

19. Considering the maintenance work that was being done, and the hazardous conditions on the ship, a reasonable person would have maintained close watch on the area, but Defendants failed to maintain the requisite level of competent watch crews to look after the vessel. Moreover, fire crews were not stationed within close vicinity, thereby depriving the ship of every possible protection from fire.

20. Defendants were grossly negligent by failing to exercise reasonable care and their conduct was an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to oneself and to others. Government investigations and conclusions regarding the ship fire support the following allegations:

- The material condition of the ship was significantly degraded, to include heat detection capability, communications equipment, shipboard firefighting systems, miscellaneous gear clutter, and combustible material accumulation. To illustrate the extent of degradation, on the morning of the fire, 87% of the ship's fire stations remained in inactive equipment maintenance status.

- The training and readiness of those responsible for the ship was marked by a pattern of failed drills, minimal crew participation, an absence of basic knowledge on firefighting in an industrial environment, and unfamiliarity on how to integrate supporting civilian firefighters. To illustrate this point, ship personnel failed to meet the time standard for applying firefighting agent on the seat of the fire on 14 consecutive occasions leading up to 12 July, 2020.

- The integration and support expected by the shore establishment did not adhere to required standards. Defendants did not meet their requirements associated with fire safety and, in doing so, failed to communicate risk to leadership while facilitating unmitigated deviations from technical directives. Defendants failed to ensure firefighters were familiar with Navy vessels on the installation, verify they were trained to respond to a shipboard fire, and effectively practice how to support ship personnel and simultaneously integrate responding mutual aid assets. Ineffective oversight by Defendants permitted unmitigated risk in fire preparedness. Defendants had a lack of familiarity with key policies and requirements and failed to comply with them.

(See 15 September 2021 Command Investigation Into The Facts And Circumstances Surrounding The Fire Onboard USS Bonhomme Richard (LHD 6) On Or About 12 July 2020.)

21. The US Navy had 15 major shipboard fires over a 12-year period culminating with the USS Bonhomme Richard fire. Despite this history, Defendants failed to learn any lessons. After the USS Bonhomme Richard fire, the US Navy finally analyzed its fire history and made several

conclusions that Navy personnel and Defendants were negligent regarding mitigation of ship fires. The conclusions pertain the Defendants and include the following:

- Lessons learned are not effectively collected and are lost over time due to an ineffective and inconsistent process to collect, analyze, disseminate, and enact critical information and corrective actions to include the process to conduct shipboard safety investigations;

- Ineffective Damage Control Board of Directors actions and processes for damage control improvements across the fire safety kill chain of prevention, detection, and response;

- A lack of appreciation for the hazards associated with significant transitions, especially during maintenance periods, and insufficient management of the associated risk;

- Unmitigated threats and vulnerabilities;

- Improper hazardous and combustible material handling and stowage;

- Declining standards in watchstanding and a failure to critically assess and address such deficiencies in a timely and effective manner;

- A lack of knowledge and insufficient oversight and accountability of the Navy's own safety and fire prevention policies;

- Ineffective day-to-day training and a lack of comprehensive integrated drill sets;

- Inconsistent attention and resourcing on pierside fire safety and damage control readiness resulting in significantly elevated risk as well as the late detection of and ineffective response to fires; and

- The overwhelming majority of piers and berths at Navy installations used for maintenance do not meet requirements for performance of depot-level maintenance.

(See Major Fires Review Executive Summary, Commander, U.S. Fleet Forces Command Commander, U.S. Pacific Fleet, July 15, 2021.)

22. Even after past fires, Defendants had been accepting higher and higher risks in its operations. After lessons from multiple past fires, Defendants should have practiced extreme caution to prevent harm. Nonetheless, fire safety procedures were not followed by Defendants on the USS Bonhomme Richard and their negligence caused (and helped spread) the fire that burned for nearly five days and emitted toxic fumes that enveloped several San Diego residential neighborhoods and endangered the life, health, and safety of innocent residents who were miles away from the ship.

23. Defendants failed to provide timely warnings and emergency instructions to the Plaintiffs.

24. Defendants should have provided timely warning to Plaintiffs to prevent any harm from the toxic chemicals that spread several miles away from the pier. It was foreseeable that when a complex structure such as USS Bonhomme Richard burns, toxic substances would be discharged into the atmosphere affecting surrounding communities. However, Defendants failed the community by neglecting to adequately warn and direct neighboring residents on how to handle the emergency. Defendants had no effective plan to assist the community in an emergency.

25. Toxic substances from the smoke adversely affected the health and safety of Claimants.

26. The smoke that emanated from the ship fire contained toxic substances. The San Diego County Air Pollution Control District found over a dozen harmful and toxic substances in the air. The Claimants inhaled these substances over several days, causing severe eye, nose, throat, and lung damage, other upper respiratory conditions, and neurological symptoms, including but not limited to headaches, dizziness, fatigue, anxiety, confusion, stress, nausea, and vomiting. Long-term health problems are certainly expected in many claimants.

27. Local regulators took note of the toxic substances resulting from the smoke and issued a Notice of Violation to the Commander Navy Region Southwest for violation of District Rules Public Nuisance Section 51, California HSC Nuisance 41700, and District Rules Visible Emissions Section 50(d)(1).

28. The below analysis of the health impacts of the fire comes from Appendix G. (In-depth Analyses of Potential Health Impacts), of the California Air Resources Board's May 2022 After Action Review of San Diego County's Air Monitoring Response to the July 2020 USS Bonhomme Richard Fire:

> "Elevated amounts of PM2.5, PM10, black carbon and NOx as well as VOCs were measured during the USS Bonhomme Richard fire, although there were some concerns on the timing of the monitoring and PAHs were not measured during the ship fire. [A comparison is made with smoke from wildfires, because there are no studies on ship fire smoke.]
>
> The health impacts of PM2.5 are very well documented, and there is a growing list of studies that have established the health impacts of exposure to wildfire smoke. Short-term exposure (days or weeks) to PM2.5 and wildfire smoke has been strongly linked to increasing severity of asthma; other respiratory disease, such as chronic obstructive pulmonary disease (COPD); inflammation or infections, including bronchitis and pneumonia; emergency department visits; and hospital admissions. Long-term exposure to PM2.5 is linked to a wide range of human health effects, such as respiratory and heart-related illnesses and hospitalizations, adverse brain effects, depression, memory

8

USS BONHOMME RICHARD FIRE COMPLAINT

loss, learning disorders, reduced lung function growth in children, and premature death.

A review of recent studies on the impacts of wildfire smoke has found worsening of respiratory and cardiovascular disease with children and the elderly and those with preexisting conditions as the most sensitive groups and greater effects were seen for PM2.5 from wildfire compared to other sources of PM2.5. Most of the impacts seen with wildfire smoke exposure are related to respiratory disease exacerbations and impacts including increased emergency room visits, particularly in young children. Hospitalizations have also been seen associated with wildfire exposure for respiratory causes including asthma exacerbations, with women more likely to seek care for asthma than men, and the highest impact is seen in the downwind smoke plumes.  Also, increased rates of visits for numerous cardiovascular disease outcomes have been seen in adults with those aged over sixty-five (65) years being the most vulnerable.  Mortality has also been associated with wildfire smoke with cardiorespiratory-related deaths (predominantly among the elderly). The mean estimated total mortality-related cost associated with the 2003 southern California wildfire event is approximately one billion U.S. dollars (2008 U.S. dollars).

Therefore, it is clear from an analysis of studies in California and elsewhere that exposure to particulate air pollution from wildfire smoke is linked to health impacts, which range from eye and throat irritation to serious health concerns and mortality. In fact, the public described increases in headache and eye, throat and sinus irritation and these impacts are seen with smoke and particulate pollution exposures.

In addition to particulate matter, fires from burning structures can release toxic compounds including Polycyclic Aromatic Hydrocarbons (PAHs) and Volatile Organic Compounds (VOCs) as well as metals, including lead. All these toxic compounds have serious health effects from chronic exposures and lead is particularly concerning due to possible effects of adverse brain development in children. CARB has led efforts to reduce lead exposures, including cleaner fuels regulations, and identified lead as a "toxic air contaminant" in 1997. The levels of lead measured during the ship fire did not exceed the health-based standards set for exposure and the Navy indicated that lead paint was not used on the ship.  National health-based air quality standards for lead are based on chronic exposure to lead over a three-month average concentration, which is different than the type of exposure experienced in the Bonhomme Richard fire.

PAH are known to be a risk for cancer, mostly with occupational exposures. Short term exposure is not associated with a high risk of toxicity (U.S. Center for Disease Control Agency for Toxic Substances and Disease Registry - CDC ATSDR). The health impacts of exposure to formaldehyde (U.S. CDC ATSDR) include irritation of the eyes, nose, and throat, along with increased tearing, and could be immediately dangerous to life and health under extremely high concentration. A study of long-term effects of the exposure to formaldehyde in workplace air found more cases of cancer of the nose and throat (nasopharyngeal cancer) than expected, but the results were inconsistent. A review of studies listed hazardous air pollutants (including formaldehyde and several VOC mixtures) that can exacerbate or induce asthma.

Studies have been conducted on urban firefighters that are exposed to smoke from the burning of industrial facilities and vehicles.  Most of these studies have found an increase in the risks of cancer in urban firefighters including an increased risk of mortality from cancers.  In a study of U.S. firefighters, investigators reported an excess of lung, digestive, and urinary cancers, and a rare cancer of the lung – mesothelioma.

The USS Bonhomme Richard was a conventionally powered amphibious assault ship. At the time of the fire, many items were stored on board the ship and burned, including tri-wall boxes, three fueled vehicles, pallets of oil drums, gas cylinders,

9

USS BONHOMME RICHARD FIRE COMPLAINT

combustible material, oxygen cylinders, and scaffolding.  The Navy is not able to confirm whether other items or materials ignited or burned in the fire. Like other ships of its kind, it contained significant amount of steel pipe and insulated wire to support plumbing, heating, communication, and electrical support of the vessel. Paints and resins, fire-resistant adhesives, lube oils, and small equipment that may contain fuels may have been located aboard the vessel in contractor hazmat lockers when not in use."

29. On July 12, 2020, Plaintiffs started smelling a pungent and extremely nauseating smell that irritated their eyes, throats, and lungs, and caused dizziness and headaches.  Many Plaintiffs tried to shut the doors and windows of their homes or offices to prevent the smell and smoke from entering the structure, but their efforts were fruitless.  Plaintiffs continued to experience extreme cough, headache, nausea, and breathing difficulties.

30. As the ship burned for five days and continued to discharge smoke and toxic substances for an even longer period of time, Plaintiffs' homes and workplaces became inescapable gas chambers. As the days passed, Plaintiffs continued to suffer from intense headaches, breathing difficulties, asthma-like symptoms, eye irritation, and a toxic smell that caused anxiety and fear.

31. Studies confirm that even natural wild-fire smoke causes life-threatening symptoms. Here, Plaintiffs had to live in toxic chemical smoke for nearly a week solely due to the negligent acts of Defendants.  Plaintiffs suffered immediate physical harm and substantial continued anxiety, in part because of the uncertainty of the physical harm that will continue to occur in the future, such as the effects that 9/11 victims experienced years after inhaling the smoke from the burning Twin Towers.

V. **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Negligence**

**(Against All Defendants)**

32. All previous paragraphs are incorporated into this cause of action.

33. Defendants each have special knowledge and expertise far beyond that of a layperson with regard to the ship safety and ship fire mitigation, engineering, construction, use, operation, inspection, repair, and maintenance of US Navy warships.

34. Defendants had a duty to Plaintiffs to take reasonable steps to prevent ship fires, fight ship fires, control ship fires and mitigate fire hazards aboard the vessel.  Defendants owed a duty to

Plaintiffs to prevent harm to them by taking reasonable steps regarding prevention and fighting ship fires.

35. Defendants breached the above duties by failing to take reasonable steps to mitigate fire hazards, prevent fires, and fight ship fires.

36. Defendants' negligence, including Defendants' negligence per se, was a substantial factor in causing Plaintiffs to suffer damages including, but not limited to, severe respiratory and neurological problems, harm to personal property, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

37. Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the USS Bonhomme Richard fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing their contracts and profitability over safety and to deter such conduct in the future.

## SECOND CAUSE OF ACTION

### Trespass

### (Against All Defendants)

38. All previous paragraphs are incorporated into this cause of action.

39. On July 12, 2020 through July 16, 2022, Plaintiffs were the owners, tenants, and/or lawful occupiers of real properties in the vicinity of the USS Bonhomme Richard fire.

40. Defendants negligently and/or recklessly allowed the USS Bonhomme Richard fire to ignite and/or spread out of control, which caused damage to Plaintiffs' properties.

41. Plaintiffs did not grant permission for any smoke, fumes, or toxic chemicals to enter their properties.

42. This trespass was a substantial factor in causing Plaintiffs to suffer damages including, but not limited to, destruction of and damage to real property, destruction of and damage to structures, destruction of and damage to personal property and cherished possessions, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, emotional distress, and severe health

problems. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

43. Those of Plaintiffs whose real property was under cultivation or used for the raising of livestock have hired and retained counsel to recover compensation for their losses and damages caused by the USS Bonhomme Richard fire. Thus, they also seek to recover all reasonable attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure section 1021.9.

44. Those of Plaintiffs who suffered damage to timber, trees, or underwood as a result of the fire, smoke and toxic fumes also seek treble or double damages for wrongful injuries to their property inclusive of timber, trees, or underwood, as permitted by Civil Code section 3346.

45. Defendants, including one or more officers, directors, and/or managers, have deliberately, and repeatedly, prioritized profits over safety. That is, Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the USS Bonhomme Richard fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing profits over safety and to deter such conduct in the future.

## THIRD CAUSE OF ACTION

### Nuisance

### (Against All Defendants)

46. All previous paragraphs are incorporated into this cause of action.

47. On July 12, 2020 through July 16, 2020, Plaintiffs were the owners, tenants, and/or lawful occupiers of real properties in the area of the USS Bonhomme Richard fire.

48. Defendants' actions and inactions created a condition and/or permitted a condition to exist that was harmful to health; offensive to the senses; an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and property; unlawfully obstructed the free passage or use, in the customary manner, of public streets and highways; and a completely predictable fire hazard.

12
USS BONHOMME RICHARD FIRE COMPLAINT

49. These conditions interfered with Plaintiffs' quiet enjoyment of their properties in a way unique to each of Plaintiffs.

50. These conditions also affected a substantial number of people at the same time.

51. At no time did Plaintiffs consent to Defendants' actions and inactions in creating these conditions.

52. An ordinary person would be reasonably annoyed and disturbed by Defendants' actions and inactions in creating these conditions.

53. Defendants' actions and inactions in creating these conditions were a substantial factor in causing Plaintiffs to suffer damages unique to each plaintiff (and different from damages suffered by other plaintiffs) including, but not limited to, destruction of and damage to real property, destruction of and damage to structures, destruction of and damage to personal property and cherished possessions, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, emotional distress and severe health problems. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

54. The seriousness of the harm Defendants have caused Plaintiffs outweighs any public benefit that Defendants may provide.

55. Defendants, including one or more officers, directors, and/or managers, have deliberately, and repeatedly, prioritized profits over safety. That is, Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the USS Bonhomme Richard fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing profits over safety and to deter such conduct in the future.

### FOURTH CAUSE OF ACTION

### Health & Safety Code § 13007

### (Against all Defendants)

56. All previous paragraphs are incorporated into this cause of action.

57. Defendants negligently, recklessly, and/or in violation of law, allowed the USS

13

USS BONHOMME RICHARD FIRE COMPLAINT

Bonhomme Richard fire start and burn.

58. Defendants' negligent, reckless, and/or illegal actions and inactions in allowing the fire to start and continue sending toxic smoke and fumes to Plaintiffs' properties was a substantial factor in causing Plaintiffs to suffer damages including, but not limited to, destruction of and damage to real property, destruction of and damage to structures, destruction of and damage to personal property and cherished possessions, discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, emotional distress and severe health problems. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

59. Those of Plaintiffs whose real property was under cultivation or used for the raising of livestock have hired and retained counsel to recover compensation for their losses and damages caused by the USS Bonhomme Richard fire. Thus, they also seek to recover all reasonable attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure section 1021.9.

60. Defendants, including one or more of their officers, directors, and/or managers, have deliberately, and repeatedly, prioritized profits over safety. That is, Defendants have a history of acting recklessly and with conscious disregard to human life and safety, and this history of recklessness and conscious disregard was a substantial factor in bringing about the USS Bonhomme Richard fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants' long history of prioritizing profits over safety and to deter such conduct in the future.

**VI.   PRAYER FOR RELIEF**

Plaintiffs seek the following damages in an amount according to proof at the time of trial:

  i. General and/or special damages determined on an individual basis according to proof;
  ii. Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal property;
  iii. Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

    iv. Evacuation expenses and alternate living expenses;

    v. Erosion damage to real property;

    vi. Past and future medical expenses and incidental expenses;

    vii. General damages for personal injury, emotional distress, fear, annoyance, disturbance, inconvenience, mental anguish, and loss of quiet enjoyment of property;

    viii. Attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure section 1021.9 and all other applicable law;

    ix. Prejudgment interest from July 12, 2020;

    x. For punitive and exemplary damages in an amount sufficient to punish Defendants' conduct and deter similar conduct in the future; and

    xi. Any and all other and further such relief as the Court shall deem proper, all according to proof.

## VII. JURY TRIAL DEMAND

Plaintiffs hereby respectfully request that this Court provide them with a jury trial on all causes of action for which a jury trial is available under the law.

Dated: July 8, 2022                           The Pendergast Law Firm, PC

                                                    Rory K. Pendergast
                                                    Attorney for Plaintiffs

Dated: July 8, 2022                           Fitzpatrick Law - APC

                                                    Robert J. Fitzpatrick
                                                    Attorney for Plaintiffs