UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRNA ADAME, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>NATIONAL STEEL AND SHIPBUILDING COMPANY, INC., et al.,<br><br>                                    Defendants. | Lead Case No.:  24-cv-00297-AJB-VET<br>Consolidated with:<br>Case No. 24-cv-00306-AJB-VET<br>Case No. 24-cv-00346-AJB-VET<br>Case No. 24-cv-00350-AJB-VET<br><br>**ORDER GRANTING MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY**<br>**(Doc. No. 44)** |

Before the Court is a motion for certification of interlocutory appeal filed by Defendant National Steel and Shipbuilding Company ("NASSCO"). (Doc. No. 44.) Plaintiffs filed an opposition (Doc. No. 51), to which NASSCO replied (Doc. No. 53). For the reasons set forth herein, the Court **GRANTS** NASSCO's motion and **STAYS** the instant action.

**I.      Background**

Plaintiffs' complaint arises from injuries caused by toxic smoke that emanated from a July 2020 fire (the "Incident") on the United States Navy's amphibious assault ship, the

1

USS Bonhomme Richard ("BHR"). (First Amended Complaint ("FAC"), Doc. No. 27, ¶¶ 1–4; *see also id.* ¶¶ 35–41 (detailing the extent of Plaintiffs' alleged injuries).)[1] The federal government contracted with Defendants in 2018 to service the BHR. (*Id.* ¶ 20.) NASSCO was charged with maintenance and repairs, which it was conducting while the BHR was pier side at the Naval Base San Diego (the "Naval Base") at the time of the Incident. (*Id.* ¶¶ 20–23.) According to the FAC, NASSCO, acting as an independent contractor, "maintained control and custody" of "portions" of the BHR while performing repairs but "deviat[ed from] the requirements of both reasonable acceptable standards in the industry and the terms of its contract in storing and maintaining its supplies on board," which "caused the fire and directly contributed to its uncontrolled spread across the ship." (*Id.* ¶¶ 22–23, 25.)

"The US Navy concluded in its own investigation that the five-day fire and destruction of the ship was preventable if ship building and maintenance personnel and contractors avoided clutter, followed fire safety measures, enabled unrestricted access to firefighting and damage control equipment, and enforced fire safety training." (*Id.* ¶ 27.) Plaintiffs allege Defendants' negligent acts and omissions caused the fire and directly contributed to its uncontrolled spread across the ship. (*Id.* ¶ 23.) After the Court denied Plaintiffs' motion to remand (Doc. No. 19), Defendants filed motions to dismiss (*see* Doc. Nos. 20; 23). In response, Plaintiffs filed the FAC. As relevant here, NASSCO then moved to dismiss the FAC, asserting *inter alia* that the Court lacked subject matter jurisdiction because NASSCO was acting as an agent of the United States Navy and, thus, immune from suit pursuant to the exclusivity provision of the Suits in Admiralty Act ("SIAA"). (Doc. No. 31.)

On March 30, 2026, the Court denied in part NASSCO's motion to dismiss, holding

---

[1] This case results from the consolidation of four actions filed against Defendants: (1) the instant lead case *Adame et al. v. Nat'l Steel and Shipbuilding Co. et al.*, 23-cv-00297-AJB-VET; (2) *Garland et al. v. Nat'l Steel and Shipbuilding Co. et al.*, 24-cv-00306-AJB-VET; (3) *Adame et al. v. Nat'l Steel and Shipbuilding Co. et al.*, 24-cv-00346-AJB-VET; and (4) *Garland et al. v. Barrera et al.*, 24-cv-00350-AJB-VET. All references to filings are to those in the lead case.

*inter alia* that (1) Defendants lodged a factual attack on jurisdiction, (2) the party invoking protection of the SIAA's exclusivity clause bears the burden of proving it applies, (3) a genuine and extensive factual dispute existed as to the issue of agency, (4) resolution of the factual issues necessary to determine agency are the same factual issues that will likely be proffered to demonstrate breach or lack of breach, and (5) it would be inappropriate for the Court on the limited record before it to resolve those factual issues for the purpose of resolving whether the SIAA's exclusivity provision applies. (Doc. No. 43, "the Order".)

After the deadline for Plaintiffs' filing of an amended complaint expired (*see id.* at 23), NASSCO filed the instant motion (Doc. No. 44). NASSCO asserts that the Order raises the following questions appropriate for interlocutory appeal:

1.    "[W]hen [does] a government contractor qualif[y] as a SIAA agent under the framework set by *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995 (9th Cir. 1997)[;]"

2.    "[W]ho bears the burden of proof for SIAA agency[;]"

3.    "[W]hether a non-charterer contractor is a SIAA agent where the Navy sets the contractor's overall mission[;]" and

4.    "[W]hether the Navy's *right* to control NASSCO's day-to-day work establishes NASSCO's SIAA agency now and is not intertwined with the merits." (*Id.*)

## II.    Legal Standard

A district court may certify an otherwise non-appealable order for review by an appellate court when three conditions are met: (1) the "order involves a controlling question of law", (2) "there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b); *see also Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met."). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002); *see also United States v. Woodbury*, 263 F.2d 784, 788 (9th Cir. 1959) ("[Section] 1292(b) is to be applied

sparingly and only in exceptional cases[.]"). "[T]he party pursuing the interlocutory appeal bears the burden of so demonstrating." *Couch*, 611 F.3d at 633.

## III. Discussion

NASSCO argues that all the SIAA agency questions identified are "substantial[,] leave ample room for differences of opinion among fair-minded jurists[,]" and are "potentially dispositive," such that resolution of the appeal "could eliminate the need for protracted, complicated, and highly resource-intensive litigation." (Doc. No. 44-1 at 3.) In opposition, Plaintiffs argue NASSCO fails to meet the high burden for certification of interlocutory appeal because the Order presents factual—not legal—questions, the law is settled or, if not, a matter of first impression is not sufficient to demonstrate a reasonable difference of opinion, and resolution of the appeal will prolong litigation, prejudice Plaintiffs, and not materially advance litigation. (Doc. No. 51.)

### A. Controlling Questions of Law

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

NASSCO argues that the questions raised are all legal in nature and could be potentially dispositive. Specifically, NASSCO asserts that a Ninth Circuit ruling on who carries the burden which legal standard applies to determining SIAA agency of a non-charter government contractor and who carries the burden could terminate the litigation. (*Id.* at 5, 8.) If the Ninth Circuit were to find Plaintiffs carry the burden of demonstrating the SIAA exclusivity provision does not apply, then immunity would be granted on the record because Plaintiffs failed to proffer any evidence on this issue. (*Id.* at 5.) If the Ninth Circuit were to hold that a "right to control" standard applied to determining SIAA agency, then "there would be no factual dispute to resolve or entwinement with the merits" (*id.* at 8) because "there is no serious dispute that the Navy had the right to control NASSCO's activities" (Doc. No. 53 at 6). (*See also id.* at 5 ("[I]t is the governing legal standard that

4

determines which facts matter.").)

In opposition, Plaintiffs argue that the questions NASSCO raises are not "'pure' legal questions" because they are "deeply . . . embedded in disputed facts," "cannot be answered without resolving those underlying factual disputes," and "cannot be resolved on the current record." (Doc. No. 51 at 10–13.)

The Court agrees to an extent with Plaintiffs' assertions that, as framed, some of the questions NASSCO raises are factually mired. (*See, e.g.*, Doc. No. 51 at 9.) In particular, NASSCO's question of "whether the Navy's *right* to control NASSCO's day-to-day work establishes NASSCO's SIAA agency now and is not intertwined with the merits," appears based on assumed facts that Plaintiffs dispute and would likely require factual analysis to resolve. However, removing the trappings and argumentation of NASSCO's framing, the Court finds that who bears the burden with regard to the SIAA's exclusivity clause and what is the appropriate standard to apply for determining SIAA agency of a non-charterer government contractor (*i.e.*, does the *Dearborn* standard apply to a non-charterer government contractor) are purely legal questions that would "materially affect the outcome" of this litigation. Accordingly, the Court finds that NASSCO has demonstrated that the Order meets the first requirement of § 1292(b).[2]

## B.   Substantial Ground for Difference of Opinion

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. "The 'substantial grounds' prong is satisfied when 'novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions.'" *ICTSI Oregon, Inc.*, 22 F.4th at 1130 (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). "[T]he district court need not 'await development of contradictory

---

[2]   Once certified for interlocutory appeal, the Ninth Circuit has "jurisdiction over *any* question within the four corners of the certified order—not just the identified controlling question." *ICTSI Oregon, Inc.*, 22 F.4th at 1132. As such, a finding that only some of the questions presented are controlling questions of law does not defeat the Order fulfilling the requirement.

24-cv-00297-AJB-VET

precedent' before concluding that the question presents a 'substantial ground for difference of opinion.'" *Id.* at 1130–31 (quoting *Reese*, 643 F.3d at 688). However, that "a party[] strong[ly] disagree[s] with the Court's ruling" or "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633.

As noted by Plaintiffs, "NASSCO points to no circuit split, no conflicting authority from several courts, and no case reaching a contrary conclusion on comparable facts" to demonstrate substantial ground for difference of opinion. (Doc. No. 51 at 8–9.) Rather, NASSCO relies on the Court's identification that the burden issue appears "unaddressed" and that the circuit-level case law on these issues has predominantly arisen in the context of charter contracts," which the Court distinguished in the Order. (Doc. No. 44-1 at 4–5, 6.) Plaintiffs argue that this Court "be[ing] among the first to address SIAA agency for a non-charterer repair contractor" or "the precise burden question . . . does not establish substantial ground for difference of opinion where existing authority points clearly in one direction." (Doc. No. 51 at 8, 11 (relying on *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).)

There is a dearth of authority on both the burden issue and the non-charterer government contractor issue. Although standing alone, the absence of authority on these issues is insufficient to fulfill this requirement," *see Couch*, 611 F.3d at 634, these novel issues arose in an unusual posture where the party asserting that federal question subject matter jurisdiction exists is also the party asserting that a provision grants them sovereign immunity. The Court agrees with Plaintiffs that the existing authority on the discretionary function exception of the Federal Tort Claims Act—both placing the burden of proof on the United States as the benefiting party and transferring the exception from the FTCA to the SIAA—points toward the Court's reasoned conclusion regarding the burden of demonstrating the SIAA's exclusivity provision applies. However, the non-charterer government contractor issue does not have a similar weight of authority. Rather, the Court's reading of *Dearborn* to apply a more expansive rule to charterers than would be

24-cv-00297-AJB-VET

applicable to non-charterer government contractors is an issue on which fair-minded jurists may reach contrary conclusions. As such, the Court finds that the Order meets the second requirement of § 1292(b).

### C.      Materially Advance Ultimate Termination of Litigation

Finally, with regard to the "materially advance" prong, if "'resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings,' interlocutory review materially advances the litigation." *Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025) (quoting *ICTSI Oregon, Inc.*, 22 F.4th at 1131). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation[.]" *Reese*, 643 F.3d at 688.

NASSCO argues that resolution of the controlling questions of law would potentially "resolve Plaintiffs' claims in NASSCO's favor," or "greatly narrow the scope of relevant discovery." (Doc. Nos. 44-1 at 8–9; 53 at 8.) NASSCO details its expected "voluminous," "extensive discovery," in light of the number of Plaintiffs, the location of the incident, the duration of its contract with the Navy, and the "technical nature of the claims." (Doc. No. 44-1 at 8.) However, "[i]f, for example, right to control is the relevant standard, then that would greatly narrow the scope of relevant discovery because evidence about a supposed lack of actual control would not be relevant to the agency inquiry." (Doc. No. 53 at 8.) Additionally, "if NASSCO is a SIAA agent, Plaintiffs' claims against NASSCO will be dismissed and NASSCO will have no need to seek contribution." (*Id.* at 2, 8–9 ("If the SIAA bars Plaintiffs' suit against NASSCO—as it should—Plaintiffs' remedy lies against the United States under the SIAA, and the contribution claim falls away.").)

In opposition, Plaintiffs assert that determination of these questions will not resolve the action but rather result in "remand for further proceedings, which is not the kind of clean resolution § 1292(b) is designed to facilitate." (Doc. No. 51 at 14.) Plaintiffs point specifically to determinations on the contract, which Plaintiffs assert the Court found "unresolvable on the current record," and to NASSCO's contribution claims. (*Id.*) With regard to the latter, Plaintiffs argue that "[i]f NASSCO prevails on the SIAA agency

24-cv-00297-AJB-VET

question, Plaintiffs' claims against NASSCO would be barred, but Plaintiffs would redirect their claims against the United States under the SIAA and the same facts would be litigated in a different configuration." (*Id.* at 15.) Because the controlling questions of law "does not resolve all the questions raise and would merely needlessly delay progress on the remaining claims," the resolution of an interlocutory appeal would not materially advance the litigation. (*Id.*) Additionally, Plaintiffs argue that "the prospect of expensive discovery" cannot be "sufficient to warrant interlocutory appeal," otherwise "§ 1292(b) would swallow the final judgment rule." (*Id.* at 17.)

Determination of who bears the burden with regard to the SIAA's exclusivity clause and what is the appropriate standard to apply for determining SIAA agency of a non-charterer government contractor may result in resolution of NASSCO's agency status in its favor without further need for factual development. If so, the parties agree that claims against NASSCO would be barred by the SIAA exclusivity provision and thus would be subject to dismissal. This alone would materially advance the instant litigation. *Reese*, 643 F.3d at 688 (finding this requirement met where the Ninth Circuit's "reversal 'may' take BPXA, as a defendant, and Reese's control claims against all remaining defendants out of the case"). That Plaintiffs assert they would "redirect their claims" and "the same facts would be litigated in a different configuration" does not undermine this finding considering that, if such repleading were found possible, it would still advance litigation by bringing the claims against the proper defendant at a relatively early stage.[3] As such, the Court finds that the Order meets the third requirement of § 1292(b).

## D.    Stay

An "application for an [interlocutory] appeal . . . shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so

---

[3]    Plaintiffs' argument regarding "§ 1292(b) would swallow the final judgment rule" is unavailing because it ignores that all three §1292(b) requirements must be met for an interlocutory appeal to certified, not just the materially advances prong. Moreover, the standard for the materially advances prong requires contemplation of the cost of litigation, *see, e.g., Sterling*, 150 F.4th at 1247, because the purpose of interlocutory appeal is to "avoid protracted and expensive litigation," *In re Cement*, 673 F.2d at 1026.

8

order." 28 U.S.C. §1292(b). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

NASSCO seeks the Court to stay the proceedings pending resolution of any interlocutory appeal because (1) "Section 1292(b) expressly permits such stays, and [(2)] the lion's share of the efficiency that certification offers would be lost without one." (Doc. No. 53 at 10; *see also* Doc. No. 44-1 at 3, 9.) Specifically, NASSCO argues that, "[i]f discovery proceeds under the current legal framework and the Ninth Circuit announces a different one, the parties will incur substantial expense developing evidence that may be irrelevant under the corrected standard. A stay protects both sides—and the Court—from that risk." (Doc. No. 53 at 10.)

Plaintiffs argue that they would be prejudiced by a stay because time will degrade evidence, the stay would prevent Plaintiffs from seeking the evidence the Court identified as necessary, and NASSCO has curated a one-sided evidentiary record that itself is inherently prejudicial. (Doc. No. 51 at 5, 16–17.)

First, the Court appreciates Plaintiffs' concerns about the degradation of evidence over time, especially considering that there is not a strict timeline upon which Plaintiffs can rely for appellate resolution. However, as identified by NASSCO, the bounds of relevance in discovery will be determined by what the legal framework is. To permit discovery to proceed, when NASSCO challenges the purely legal issues that would materially impact the trajectory of litigation, would risk significant unnecessary expense and undermine any potential efficiency gained from an interlocutory appeal. Despite Plaintiffs' arguments to the contrary, freezing the record with only the evidence this Court had before it when resolving the Order based on each party's strategic litigation decisions up to that point is not in and of itself unfair. If the Ninth Circuit declines to accept the appeal or resolves the issues in Plaintiffs' favor, then Plaintiffs will have the opportunity to continue to develop their evidentiary record as litigation proceeds.

Finally, Plaintiffs argue that "[t]he agency question will be fully available for review

9

after final judgment, on a complete factual record. It is not at risk of being lost." (Doc. No. 51 at 18.) However, this is not wholly accurate. At the heart of the "agency question" is the issue of sovereign immunity. If the Ninth Circuit were to, after completion of this litigation, determine that the burden and standard applied should have been different such that NASSCO is immune from suit, then its entitlement to that immunity would have been lost. *See Taylor v. Cnty. of Pima*, 913 F.3d 930, 934 (9th Cir. 2019) ("[A]n interlocutory appeal is necessary to vindicate a[n] . . . entity's entitlement to immunity from suit, which would be lost if a case were permitted to go to trial."); *see also SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725 (9th Cir. 2017) (collecting cases of "interlocutory denials of certain particularly important immunities from suit"). As such, the prejudice Plaintiffs may face by delaying discovery and potential recovery is overshadowed by NASSCO's potential prejudice of loss of a right to immunity from suit.

Having considered and weighed the parties' respective potential prejudice and hardships with regard to a stay, the Court finds a stay proper in light of the circumstances.

**IV.   Conclusion**

For the reasons set forth above, the Court **GRANTS** NASSCO's motion for certification of an interlocutory appeal. The Court hereby **CERTIFIES** that its March 30, 2026 Order on NASSCO's motion to dismiss (Doc. No. 43) involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from which may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). NASSCO has **ten days** from the electronic docketing of this order to petition the Ninth Circuit for review. *See id.* If NASSCO timely files a petition with the Ninth Circuit, the case will be **STAYED** pending resolution of that petition.

**IT IS SO ORDERED.**

Dated:  July 6, 2026

Hon. Anthony J. Battaglia
United States District Judge

10

24-cv-00297-AJB-VET